1  SANFORD JAY ROSEN – 062566
   JENNY S. YELIN – 273601
2  ADRIENNE PON HARROLD – 326640
   ROSEN BIEN GALVAN & GRUNFELD LLP
3  101 Mission Street, Sixth Floor
   San Francisco, California 94105-1738
4  Telephone:   (415) 433-6830
   Facsimile:    (415) 433-7104
5  Email:        srosen@rbgg.com
                 jyelin@rbgg.com
6                aharrold@rbgg.com

7  Attorneys for Plaintiff
   MICHAEL ANDREWS

8

9              UNITED STATES DISTRICT COURT

10     NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

12  MICHAEL ANDREWS,                    Case No. 3:20-cv-00485-SK

13              Plaintiff,              **PLAINTIFF'S NOTICE OF MOTION
                                        AND MOTION FOR REASONABLE
14       v.                             ATTORNEY'S FEES AND EXPENSES;
                                        MEMORANDUM OF POINTS AND
15  EQUINOX HOLDINGS, INC., a Delaware  AUTHORITIES IN SUPPORT
    corporation; and DOES 1 to 10, inclusive,  THEREOF**
16
                Defendants.             Judge:   Hon. Sallie Kim
17
                                        Date of Removal:    January 22, 2020
18                                      Complaint Filed:    December 27, 2019
                                        Hearing Date:       November 8, 2021
19                                      Hearing Time:       9:30 a.m.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 2

INTRODUCTION .................................................................................................... 2

STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3)) ........................ 3

FACTUAL AND PROCEDURAL BACKGROUND ......................................... 4

    Work up to Equinox's Rejection of Plaintiff's Pre-litigation Offer and
        Refusal to Negotiate: February 19, 2015 to April 16, 2015 ....................... 4

    Work Following Equinox's Rejection of Plaintiff's Pre-Litigation Demand
        Through EEOC's First Attempt to Resolve the Case: April 17, 2015 to
        November 9, 2017 ........................................................................................ 5

    Work During the EEOC's Continued Investigation Through Its Reasonable
        Cause Determination and Its Final Additional Settlement Attempts:
        November 10. 2017 to August 27, 2018 ...................................................... 6

    Work Following Equinox's Rejection of the EEOC's Third Settlement Effort
        Through Conclusion of the Court-Ordered Early Mediation: August
        28, 2018 through September 2, 2020 .......................................................... 6

    Work Following the Failed Mediation, including Depositions, Discovery,
        and Summary Judgment, up Through Mandatory Settlement
        Conference:  September 3, 2020 through August 9, 2021. ......................... 7

    Work Following the Failed MSC up to Equinox's Rule 68 Offer of
        Judgment: August 10, 2021 to August 23, 2021 ....................................... 9

ARGUMENT ........................................................................................................... 9

I.    PLAINTIFF'S COUNSEL'S LODESTAR CLAIM IS BOTH
        REASONABLE AND WARRANTED ................................................... 10

    A.    Plaintiff's Counsel's Time Was Reasonable and Appropriate
          Especially Given Counsel's Substantial and Appropriate Billing
          Judgment Reductions ............................................................................ 11

    B.    RBGG's Rates Are Well Within the Market Rates for Comparable
          Attorneys in Comparable Cases in the San Francisco Bay Area and
          Frequently Have Been Approved by Judges of This and Other Courts. ....... 15

II.    THE COURT SHOULD AWARD A 2.0 MULTIPLIER ......................... 17

    A.    This Case Involved Novel and Difficult Questions. ....................... 19

    B.    Plaintiff's Counsel Demonstrated High Levels of Skill in Presenting
          the Case. ................................................................................................ 20

[3796916.5]

i

Case No. 3:20-cv-00485-SK

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEY'S FEES AND
EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.    Plaintiff's Counsel was Precluded from Other Work During the Six
Year Pendency of this Case. .......................................................................... 21

D.    Plaintiff's Counsel Assumed Significant Contingent Risk. ......................... 22

III.    PLAINTIFF'S COUNSEL'S DOCUMENTED COSTS AND EXPENSES
ARE REASONABLE AND APPROPRIATE ........................................................ 22

CONCLUSION ................................................................................................................. 23

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEY'S FEES AND
EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beaty v. BET Holdings, Inc.*,
222 F.3d 607 (9th Cir. 2000) ...................................................................... 18

*Blum v. Stenson*,
465 U.S. 886 (1984) ....................................................................... 10, 15

*Caldera v. Dep't of Corr. & Rehab.*,
48 Cal. App. 5th 601 (2020) ........................................................................ 18

*City of Los Angeles v. Superior Ct.*,
21 Cal. 4th 292 (1999) ................................................................................ 18

*Cole v. County of Santa Clara*,
Case No. 16-CV-06594-LHK (N.D. Cal. Mar. 21, 2019) ........................................ 17

*Conrad v. Chaco Credit Union, Inc.*,
946 F.2d 894 (6th Cir. 1991) ...................................................................... 19

*Crommie v. State of Cal., Pub. Utilities Comm'n*,
840 F. Supp. 719 (N.D. Cal. 1994) ............................................................... 18

*E.E.O.C. v. Harris Farms, Inc.*,
No. CIVF02-6199AWILJO, 2006 WL 1028755 (E.D. Cal. Mar. 1, 2006) ............ 22

*Edgerton v. State Pers. Bd.*,
83 Cal. App. 4th 1350 (2000) ...................................................................... 21

*Flannery v. Prentice*,
26 Cal. 4th 572 (2001) .................................................................................. 9

*Glaviano v. Sacramento City Unified Sch. Dist.*,
22 Cal. App. 5th 744 (2018) ................................................................. 10, 15

*Graham v. DaimlerChrysler Corp.*,
34 Cal. 4th 553 (2004) ................................................................................ 15

*Greene v. Dillingham Constr., N.A., Inc.*,
101 Cal. App. 4th 418 (2002) ...................................................................... 19

*Hernandez v. County of Monterey*,
Case No. 13-cv-02354-BLF, 2019 WL 1934882 (N.D. Cal. May 1, 2019) ............ 17

*Horsford v. Bd. of Trustees of Cal. State Univ.*,
132 Cal. App. 4th 359 (2005) ............................................................. 10, 15, 21, 22

*Human Rights Defense Center v. County of Napa*,
No. 20-CV-01296-JCS, 2021 WL 1176640 (N.D. Cal. Mar. 28, 2021) ............ 15, 17

*La Montagne v. Am. Convenience Prod., Inc.*,
    750 F.2d 1405, 1410 (7th Cir. 1984) ........................................................................ 19

*Leuzinger v. Cty. of Lake*,
    No. C 06-00398 SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009) ............... 18, 21

*Mangold v. Cal. Pub. Utilities Comm'n*,
    67 F.3d 1470 (9th Cir. 1995) ................................................................................... 18

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ................................................................................................. 15

*Ortiz v. Werner Enterprises, Inc.*,
    834 F.3d 760 (7th Cir. 2016) ................................................................................... 19

*PLCM Group, Inc. v. Drexler*,
    22 Cal. 4th 1084 (2000) ........................................................................................... 10

*Prison Legal News v. Scharzenegger*,
    608 F.3d 446 (9th Cir. 2010) ................................................................................... 15

*Taylor v. Nabors Drilling USA*,
    LP, 222 Cal. App. 4th 1228, 166 Cal. Rptr. 3d 676 (2014) ..................................... 19

*Trulsson v. Cty. of San Joaquin Dist. Attorney's Off.*,
    No. 2:11-CV-02986 KJM, 2014 WL 5472787 (E.D. Cal. Oct. 28, 2014) ......... 18, 19

*Vo v. Las Virgenes Mun. Water Dist.*,
    79 Cal. App. 4th 440, 446 (2000) ............................................................................ 11

*Weeks v. Baker & McKenzie*,
    63 Cal. App. 4th 1128 (1998) ............................................................................... 9, 12

**STATUTES**

Cal. Gov. Code § 12900 ...................................................................................................... 2

Cal. Gov't Code § 12965 ................................................................................................. 9, 22

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEY'S FEES AND
EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**NOTICE OF MOTION AND MOTION**

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **November 8, 2021, at 9:30 a.m.**, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Sallie Kim, Plaintiff Michael Andrews ("Plaintiff"), will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 54(d) for an award of Plaintiff's reasonable attorney's fees and expenses incurred in this case.  Plaintiff and his attorneys seek an award of attorney's fees based on a lodestar of $1,366,971.00 through August 23, 2021, the date Defendant Equinox Holdings, Inc. ("Equinox") served its Rule 68 Offer of Judgment.  Plaintiff requests that this lodestar be adjusted upward by a multiplier of 2.0 pursuant to California law, making the total award for fees $2,733,942.00, for an upward enhancement based counsel's contingent risk, preclusion of other work, the skill demonstrated, and the exceptional results achieved by Plaintiff's counsel.  Plaintiff also seeks an award of disbursements and costs of $35,872.52, for a total amount of $2,769,814.52.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities filed herewith; the supporting declarations of Sanford Jay Rosen, Jenny S. Yelin, Michael Romero Andrew, Richard M. Pearl, and Lawrence A. Organ, and the exhibits thereto; the pleadings and orders on file in this matter; and any oral argument or evidence permitted at any hearings on this Motion.

DATED:  September 29, 2021          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Jenny S. Yelin*

Jenny S. Yelin

Attorneys for Plaintiff MICHAEL ANDREWS

1
2

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION

3   This is an age discrimination case brought solely under the California Fair

4   Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 *et seq*.  Plaintiff's

5   attorneys, Rosen Bien Galvan & Grunfeld LLP ("RBGG") have represented him since

6   early 2015.  Plaintiff has prevailed, having accepted Defendant Equinox Holdings, Inc.'s

7   ("Equinox") August 23, 2021 Rule 68 Offer of Judgment, pursuant to which Equinox has

8   paid Plaintiff $162,000 to settle his claims.  The Rule 68 Offer explicitly provides that

9   Equinox will pay Plaintiff's attorneys their reasonable attorney's fees and cost incurred

10  through August 23, 2021.  California attorney's fees law controls determination of the

11  amount of fees.

12  Before filing his employment discrimination charges with the EEOC, Plaintiff

13  attempted in good faith to settle his claims privately with Equinox.  Equinox spurned the

14  offer, leaving no room for negotiation and leading to more than three years of EEOC

15  proceedings and multiple attempts by the agency to facilitate a settlement that Equinox

16  also spurned.  After an extensive investigation, the EEOC issued a determination that there

17  was reasonable cause to find that Equinox had discriminated against Plaintiff due to his

18  age.  Plaintiff's attorney's fees and costs were modest at this point, and when the EEOC

19  demanded that Equinox settle the case for $500,000 as a lump sum settlement, Plaintiff

20  would have accepted that amount or possibly less.  Still, Equinox refused even to

21  participate in settlement negotiations with the EEOC, which then issued a Right to Sue

22  Notice.  Two years of contentious and time-consuming litigation ensued, during which

23  Equinox could have settled early on before causing its and Plaintiff's attorney's fees and

24  costs to increase exponentially.

25  After a failed court-ordered early mediation, Equinox's failed attempt to dispose of

26  the case through summary judgment, and a failed mandatory settlement conference, ten

27  weeks before trial, Equinox served its Rule 68 Offer of Judgment on Plaintiff, for a

28  payment of $162,000 for his damages and reasonable attorney's fees and costs to date.

Before deciding to accept the Offer, Plaintiff accepted Equinox's request to negotiate an increase in his damages payment in exchange for confidentiality and a process for determining his attorney's fees and costs without involving the Court.  Equinox negotiated without serious intent, by offering to increase the damages payment to $200,000 in exchange for Plaintiff's agreement to pay the full fees of any neutral private arbitrator that might be hired to decide the amount of fees and costs, negating the value of the increase in the damages payment.

Plaintiff timely served acceptance of the Rule 68 Offer of Judgment on September 3, 2021.  The Court entered Judgement on September 16, 2021, reserving ancillary jurisdiction to determine Plaintiff's reasonable attorney's fees and costs.  Counsel for the parties concluded their meet and confer process pursuant to Local Rule 54-5 on September 23, 2021 without coming to an agreement.  This motion for fees and costs is filed within the fourteen days provided in Local Rule 54-5.  Plaintiff's motion should be granted in full.  Plaintiff's attorneys should be awarded their full billing-judgment-reduced lodestar, the 2.0 multiplier that they request, and their costs.

### STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3))

1.      Whether Plaintiff's counsel's hourly rates are appropriate given counsel's experience and skill and the market rates in the San Francisco Bay Area market for rates in cases of similar complexity and work by attorneys of comparable experience and skill.

2.      Whether Equinox should pay Plaintiff's counsel at these hourly rates for billing-judgment-reduced time they documented on the billing records provided to the Court for their work through August 23, 2021.

3.      Whether Plaintiff's counsel should be awarded an upward adjustment of 2.0 of their lodestar due to all or some of the following factors: continent risk, preclusion of work, quality of work involving often complex or difficult legal issues, and achieving outstanding results.

4.      Whether Plaintiff's counsel should recover their expenses.

## FACTUAL AND PROCEDURAL BACKGROUND

Most of the pertinent facts are not in dispute.  This matter has been pending since March 13, 2015.  Equinox adopted an ill-advised strategy of fighting Plaintiff's claims at every turn, including spurning numerous opportunities to settle the claims.  Equinox served its Rule 68 Offer of Judgment ten weeks before the trial was to set to commence, after Plaintiff's lawyers had to expend the time and money claimed by this motion.  *See* ECF No. 81; ECF No. 97 at Ex. A.

A summary of Plaintiff's counsel's work at each significant phase of their representation of Plaintiff demonstrates that the work performed was due in large part to Equinox's intransigent litigation and settlement strategy.  *See* Declaration of Sanford Jay Rosen in Support of Plaintiff's Motion for Reasonable Attorney's Fees and Expenses ("Rosen Decl."), filed herewith, at ¶¶ 59-83.  The amounts of Plaintiff's fees are based on his attorney's regular 2021 billing rates and are calculated on the basis of the time claimed after appropriate billing judgment reductions, most of which are shown on the billing records provided to the Court.  *Id.*, ¶¶ 53-58 & Ex. L.

**Work up to Equinox's Rejection of Plaintiff's Pre-litigation Offer and Refusal to Negotiate: February 19, 2015 to April 16, 2015**

As detailed in the Court's May 13, 2021 Summary Judgment Order, Equinox terminated Mr. Andrews on September 17, 2014 during a transition period for its acquisition of the Sports Club/LA Market Street facility in San Francisco.  ECF No. 77 at 7 ("Summary Judgment Order"); *see also* ECF No. 55 at 13.[1]  Starting in February 2015, Plaintiff's counsel, RBGG, began investigating Mr. Andrews' claims, prepared a document preservation letter, and prepared a demand letter.  Rosen Decl. at ¶¶ 59-60.  On March 13, 2015, RBGG sent Equinox both letters, offering to resolve the matter privately before litigation for a total of $325,000.  *Id.*, ¶ 60; Declaration of Jenny S. Yelin in Support of Plaintiff's Motion for Reasonable Attorney's Fees and Expenses ("Yelin Decl."), filed

---

[1] Plaintiff refers to the ECF pagination when available, for clarify.

herewith, at ¶ 2, Ex. A.  Equinox responded on April 16, 2015.  Rosen Decl. ¶ 61; Yelin

Decl. ¶ 2, Ex. B.  It flatly rejected Mr. Andrews' offer and refused to negotiate, stating that

"Equinox has a strong litigation philosophy of not settling cases simply to avoid defense

costs, and accordingly, we do not wish to enter into settlement discussions. We intend to

vigorously defend against any claims brought by Mr. Andrews."  *Id*.  As of that date,

RBGG's lodestar fees were $16,375.00 and its costs were $0.  Rosen Decl. ¶ 61.

**Work Following Equinox's Rejection of Plaintiff's Pre-Litigation Demand Through EEOC's First Attempt to Resolve the Case: April 17, 2015 to November 9, 2017**

RBGG proceeded to prepare a complaint to the EEOC, asserting both California

and federal claims.  *Id.*, ¶ 62.  RBGG filed the complaint on July 13, 2015.  *Id.*.  RBGG

also sought Mr. Andrews' personnel records from the holding company that had owned

Sports Club/LA.  *Id.*  Over the next two years, RBGG had numerous conversations and e-

mail communications with the assigned EEOC investigators about their investigation and

evaluation of the case.  *Id.*, ¶¶ 63-64; Yelin Decl. at ¶¶ 4-9.  On January 16, 2016, the

EEOC interviewed Mr. Andrews with one of his attorneys, Ms. Yelin, present.  Yelin Decl.

at ¶ 6.  Following the interview, Ms. Yelin communicated several times with the EEOC

investigator about other documents and information he requested.  *Id.*, ¶¶ 6-7.  Throughout

2016 and 2017, Ms. Yelin communicated with the EEOC investigator periodically about

the status of the investigation.  *Id.*, ¶¶ 6-9 & Exs. C, D; Rosen Decl. ¶ 64.

In the fall of 2017, the investigator suggested that he try to negotiate a resolution

with Equinox.  Rosen Decl. ¶ 64; Yelin Decl. at ¶ 7.  Ms. Yelin conveyed Mr. Andrews'

reduced demand of $275,000 to the investigator on October 27, 2017.  Rosen Decl. ¶ 64;

Yelin Decl. at ¶ 8.  The EEOC investigator scheduled a telephone call with Equinox's

counsel for November 9, 2017 to convey that offer, but apparently Equinox did not show

up for the call and never responded to the investigator's further attempt to discuss

settlement**.**  Rosen Decl. ¶ 64; Yelin Decl. at ¶ 9.  As of November 9, 2017, RBGG's

lodestar fees were $69,765.00 and its costs were $0.  Rosen Decl. ¶ 64.

**Work During the EEOC's Continued Investigation Through Its Reasonable Cause Determination and Its Final Additional Settlement Attempts: November 10. 2017 to August 27, 2018**

Having received no response from Equinox to its request to discuss resolution of the matter, the EEOC resumed its investigation.  Yelin Decl. ¶ 10.  In late 2017 and 2018 Ms. Yelin periodically communicated with the EEOC about the status of the investigation.  *Id.*, at ¶¶ 10-11 & Ex. E; Rosen Decl. ¶ 65.  On July 31, 2018, the EEOC issued its letter determining that there was reasonable cause to believe that Equinox had terminated Mr. Andrews because of his age.  Summary Judgment Order at 6; *see also* Yelin Decl. ¶ 12 & Ex. F.  Shortly afterwards, the EEOC investigator contacted Ms. Yelin about scheduling a "Conciliation Conference" with Equinox, to resolve the matter before it was referred to the EEOC's Legal Department for review.  Yelin Decl. ¶ 13; Rosen Decl. ¶ 66.  On Plaintiff's behalf, RBGG agreed to participate in that conference.  *Id.*  On August 27, 2018, the EEOC investigator informed RBGG that Equinox had refused to participate in the Conciliation Conference.  Yelin Decl. ¶ 13 & Ex. G; Rosen Decl. ¶ 67.  He suggested that the EEOC make a last ditch effort to get Equinox to settle the matter before he referred it to the Legal Department.  Yelin Decl. ¶ 14 & Ex. H; Rosen Decl. ¶ 67.  RBGG agreed.  Rosen Decl. ¶ 67.

On August 27, 2018, the EEOC conveyed a lump sum offer to Equinox to settle the matter for $500,000.  Yelin Decl. ¶¶ 13-14 & Ex. H; Rosen Decl. ¶ 67.  Equinox rejected the offer and again made no counter-proposal.  Yelin Decl. ¶¶ 14, 15 & Exs. H, I; Rosen Decl. ¶ 67.  As of August 27, 2018, RBGG's lodestar fees were $81,220.00 and its costs were $13.21.  Rosen Decl. ¶ 67.

**Work Following Equinox's Rejection of the EEOC's Third Settlement Effort Through Conclusion of the Court-Ordered Early Mediation: August 28, 2018 through September 2, 2020**

The EEOC's investigative unit referred the case to its Legal Department.  Yelin Decl. ¶ 15 & Ex. I; Rosen Decl. ¶ 68.  RBGG periodically checked with the EEOC regarding the status of the agency's review.  Rosen Decl. ¶ 68.  On October 8, 2019, the EEOC issued its Right to Sue Notice.  *Id.*; Yelin Decl. ¶ 16 & Ex. J.

RBGG prepared a Complaint, which it filed in San Francisco Superior Court on December 27, 2019.  Rosen Decl. ¶ 69; Yelin Decl. ¶¶ 17, 19.  Plaintiff also made a FOIA request for the full EEOC investigative file, and obtained it quickly, despite a long backlog at the agency.  Yelin Decl. ¶ 18; Rosen Decl. ¶ 69.  Equinox removed the case to this Court on diversity grounds.  ECF No. 1.  Equinox's Answer included many unsupported or improper affirmative defenses.  ECF No. 1-1 at 37-41.  After telling Equinox that Plaintiff would move to strike Equinox's improper affirmative defenses, RBGG negotiated a Stipulated Order dismissing many of those defenses.  ECF Nos. 11, 14; Rosen Decl. ¶ 70.

In the Spring of 2020, RBGG prepared and served Plaintiff's initial disclosures, complied with all requirements of Rule 26(f), served written discovery requests, negotiated a Stipulated Protective Order, and participated in an initial CMC.  Rosen Decl. ¶ 71; Yelin Decl. ¶ 20.  RBGG also responded to voluminous discovery requests from Equinox.  *Id.*

Between June and September 2020, Plaintiff's counsel met and conferred with Equinox, briefed a discovery dispute, analyzed Equinox's document productions, prepared for and defended Mr. Andrews' two day deposition, and met and conferred with Equinox's counsel regarding Equinox's repeated delays of the Jack Gannon deposition and insistence on delaying the court-ordered early mediation.  Rosen Decl. ¶ 72; Yelin Decl. ¶ 20.

Howard Herman conducted the court-ordered mediation on September 2, 2020.  *Id*. RBGG updated the analysis of Mr. Andrews' damages, and prepared mediation statements and exhibits.  *Id*.  The mediation was not successful, because it appeared that Equinox continued to refuse to take settlement seriously, perhaps in the hope that it could end the case through a motion for summary judgment despite the existence of significant factual disputes.  Rosen Decl. ¶ 73.  As of September 2, 2020, RBGG's lodestar fees were $437,332.50 and its costs were $4,643.80.  *Id.*

**Work Following the Failed Mediation, including Depositions, Discovery, and Summary Judgment, up Through Mandatory Settlement Conference: September 3, 2020 through August 9, 2021.**

After the failed mediation, RBGG prepared for and deposed David Stern, Jack Gannon, and Emerson Figueroa.  *Id.*, ¶ 74; Yelin Decl. ¶ 20.  RBGG negotiated a

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEY'S FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

stipulation regarding emotional distress damages, and negotiated agreements with the EEOC and Equinox regarding the authenticity of the documents in the EEOC file and other documents. *Id.*; *see* ECF Nos. 36, 40. RBGG retained and worked with Plaintiff's economics expert, Dr. Charles Mahla, and defended his deposition. Rosen Decl. ¶ 74; Yelin Decl. ¶ 20.

In the Winter and Spring of 2021, RBGG worked with its private investigator to locate and interview witnesses and prepared declarations with several of them. Rosen Decl. ¶ 75; Yelin Decl. ¶ 20. RBGG briefed its Cross-Motion for Summary Judgment, *see* ECF No. 55, and opposed Equinox's Motion, *see* ECF No. 54. Plaintiff hired and worked with jury consultants as to his summary judgment presentations and starting the process of preparing for trial. Rosen Decl. ¶ 75; Yelin Decl. ¶ 20. Excerpts of all the depositions and many of the documents produced in the case, including the parts of the EEOC file, were submitted to the Court in support of the parties' positions as to summary judgment. *See, e.g.*, ECF Nos. 48-3, 48-4, 48-5, 48-6, 48-9, 48-10, 56.

The summary judgment motions were heard on May 9, 2021. Rosen Decl. ¶ 75. The Court's May 13, 2021 Order denied the motions, with some indication that the odds favored a verdict and judgment for Plaintiff. *See generally* Summary Judgment Order. Plaintiff's counsel then started preparing for trial in earnest, as well as preparing for the Mandatory Settlement Conference ("MSC"), including Plaintiff's MSC statements. Rosen Decl. ¶ 76; Yelin Decl. ¶ 20.

Many rounds of communications with the Court and Equinox's counsel were required to schedule the August 9th MSC. Rosen Decl. ¶ 76. RBGG also had to address Equinox's failed efforts to bifurcate the trial and to delay the production of financial information. *Id.*; *see* ECF Nos. 90, 93. Plaintiff's counsel engaged Plaintiff's economics expert to analyze Equinox's financial records. Rosen Decl. ¶ 76. RBGG also began in earnest identifying potential exhibits, witness likely to be called to testify, and drafting and planning jury instructions and motions *in limine*. *Id.*, at ¶¶ 76-78.

Equinox seemed to come to the MSC once again with no realistic assessment of the

1   value of the case and no apparent intent to engage meaningfully in settlement discussions.

2   *Id.*, ¶ 77.  As of August 9, 2021, RBGG's lodestar fees were $1,286,590.00 and its costs

3   were $35,686.57.  *Id.*

4   **Work Following the Failed MSC up to Equinox's Rule 68 Offer of Judgment: August**

5   **10, 2021 to August 23, 2021**

6           In the two weeks between the failed MSC and service of Equinox's Rule 68 Offer

7   of Judgment, Plaintiff's counsel necessarily ramped up trial preparation.  *Id.*, ¶ 78.  RBGG

8   continued to refine and work on jury instructions and draft motions *in limine*, planned a

9   mock trial with the jury consultants, and continued to organize Plaintiff's order of proof,

10  trial plan, potential exhibits, and witness list.  *Id.*  By the time Equinox served the Rule 68

11  Offer on August 23, 2021, RBGG's billing judgment reduced lodestar was $1,366,971.00

12  and its costs were $35,872.52.  *Id.*

13          Since August 23, 2021, RBGG continued to do a lot of trial preparation work,

14  including completing and serving motions *in limine*, refining proposed jury instructions,

15  working with jury consultants, and meeting and conferring with Equinox as to pretrial

16  matters.  *Id.*, ¶ 79.  At Equinox's invitation, RBGG also negotiated with its counsel in vain

17  pursuit of a possible confidential settlement.  *Id.*, ¶¶ 79-80 & Ex. M.  RBGG discussed

18  with Mr. Andrews both these settlement negotiations and whether he should accept the

19  Rule 68 Offer of Judgment.  *Id.*, ¶ 79.  Under the terms of the Rule 68 Offer, no claim is

20  made for these fees or any attendant costs.  ECF No. 97 at Ex. A.

21                                       **ARGUMENT**

22          By the terms of the Rule 68 Offer, Plaintiff is the Prevailing party.  *Id.*; *see also* Cal.

23  Gov. Code § 12965(b).  Under California fees law, which controls here, the "California

24  courts long have recognized[] [that] section 12965 fees are intended to provide 'fair

25  compensation to the attorneys involved in the litigation at hand and encourage [] litigation

26  of claims that in the public interest merit litigation.'"  *Flannery v. Prentice*, 26 Cal. 4th

27  572, 584 (2001) (quoting *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1172

28  (1998), *as modified on denial of reh'g* (June 2, 1998)).  "The award of reasonable attorney

1  fees accomplishes the Legislature's expressly stated purpose of FEHA to provide effective

2  remedies that will eliminate [] discriminatory practices." *Horsford v. Bd. of Trustees of*

3  *Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (2005) (internal quotation marks omitted).

4        On the record here, the fees and costs requested are reasonable and should be

5  awarded.  Plaintiff and his attorneys have advanced the core purpose of FEHA and the

6  public interest by causing Equinox, a stubborn and unrepentant "take no prisoners"

7  discriminator to endure a public judgment effectively admitting its guilt.  *See* Declaration

8  of Lawrence A. Organ in Support of Plaintiff's Motion for Reasonable Attorney's Fees and

9  Expenses ("Organ Decl."), filed herewith, at ¶ 20; Declaration of Michael Romero Andrew

10  in Support of Plaintiff's Motion for Reasonable Attorney's Fees and Expenses ("Andrews

11  Decl."), filed herewith, at ¶¶ 2-3; Rosen Decl. ¶¶ 3, 83; Yelin Decl. ¶¶ 2, 7, 9, 13, 15.  Age

12  discrimination in employment cases are notoriously difficult.  *See, e.g.*, Rosen Decl. ¶ 85;

13  Organ Decl. ¶ 19.  Equinox's actions and strategy required Mr. Andrews' attorneys to

14  perform the work documented in their time records and the Court's files, which they did

15  with a high level of skill.  That work caused Equinox to concede liability by making its

16  Rule 68 Offer, which has resulted in a public judgment.  Complex and subtle legal

17  questions had to be addressed before Mr. Andrews prevailed.

18  **I.**    **PLAINTIFF'S COUNSEL'S LODESTAR CLAIM IS BOTH REASONABLE AND WARRANTED**

19

20        Under California law, determination of a fees award starts with calculating the

21  lodestar by multiplying the number of hours the prevailing party reasonably expended by

22  the reasonable hourly rate.  *PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1094 (2000),

23  *as modified* (June 2, 2000).  As demonstrated below and in the supporting declarations,

24  RBGG's  2021 billing rates are documented to be well within the range of the "prevailing

25  [rates] for private attorneys in the [San Francisco Bay Area] community conducting non-

26  contingent litigation of the same type."  *Glaviano v. Sacramento City Unified Sch. Dist.*,

27  22 Cal. App. 5th 744, 751 (2018); *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1133

28  (2001); *Blum v. Stenson,* 465 U.S. 886, 895 n.11(1984) (similar standard under federal

1   law).

2       Also, as demonstrated below, the billing judgment reduced time for which fees are

3   sought, was reasonable and appropriate, indeed necessary, to achieve Plaintiff's judgment.

4   *See Ketchum*, 24 Cal. 4th at 1132.

5       Also as shown below, under California law, a 2.0 multiplier of the lodestar should

6   be awarded due to all or some of the following factors: the novelty and difficulty of the

7   issues in the case, counsel's skill in presenting the case successfully, the contingent nature

8   of the case, which posed risk to Plaintiff's counsel and precluded them from accepting

9   other fee-paying work, and the results obtained.  *Id.*

10      **A.**    **Plaintiff's Counsel's Time Was Reasonable and Appropriate Especially Given Counsel's Substantial and Appropriate Billing Judgment**

11              **Reductions.**

12       "[A]n attorney fee award should ordinarily include compensation for *all* hours

13   *reasonably spent* …."  *Id.* at 1133 (emphasis in original); *see also Vo v. Las Virgenes Mun.*

14   *Water Dist.*, 79 Cal. App. 4th 440, 446 (2000) ("Under the lodestar method, a party who

15   qualifies for a fee should recover for all hours reasonably spent unless special

16   circumstances would render an award unjust.").  The time Plaintiff's attorneys expended

17   on this case was both necessary and reasonable given Equinox's litigation positions and

18   strategy, the more than six-year time span of the case, and the challenging nature of age

19   discrimination cases and the issues in this case.  *See* Declaration of Richard M. Pearl in

20   Support of Plaintiff's Motion for Reasonable Attorney's Fees and Expenses ("Pearl

21   Decl."), filed herewith, at ¶ 22 (Plaintiff's counsel's lodestar is reasonable especially for an

22   age discrimination case and where Defendant did not make any meaningful offers until the

23   eve of trial); *see also* section II.A, *infra*.  The Court should not reward Equinox for its

24   obstinacy.  *Vo*, 79 Cal. App. 4th at 442, 444-45 (upholding fee award of $470,000 when

25   damages were $37,500 where, as the trial court explained, "defendant's complete failure to

26   offer any amount in settlement while knowing of the wholly inappropriate conduct that its

27   employees were engaging in; defendant's nonsettlement posture in the case which more

28   than any other factor caused the case to be so intensely litigated; and the fact that conduct

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEY'S FEES AND
EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  which the FEHA was enacted to deter was exposed and hopefully corrected"); *see also*

2  *Weeks*, 63 Cal. App. 4th at 1175-76 (attorneys litigating FEHA cases "can anticipate

3  receiving full compensation for every hour spent litigating a claim against even the most

4  polemical opponent").

5      Plaintiff's counsel made appropriate billing judgment reductions, based on the same

6  careful review of the billing records that is typically conducted prior to sending a bill to a

7  fee-paying client.  Rosen Decl. ¶¶ 53-57 & Ex. L; Yelin Decl. ¶ 22.  These reductions

8  included eliminating purely administrative time, and not charging for time that even

9  arguably was inefficient or unduly duplicative.  *Id*.  In addition to these reductions,

10  substantial time was not claimed because it was not recorded, for example.  *See* Rosen

11  Decl. ¶ 56.  After the discrete billing judgment reductions of $111,226.00, approximately

12  7.5% of the total fees, Rosen Decl. ¶ 55 & Ex. L, Plaintiff's lodestar is $1,366,971.00, *id.*,

13  ¶ 58.

14      Plaintiff's counsel litigated this case with a small and efficient team of attorneys

15  and support staff, numbering two attorneys until Ms. Harrold joined the firm and the case

16  team in December 2020, as discovery was closing and the parties were preparing for the

17  summary judgment phase.  *Id.*, ¶¶ 46, 48.  Until December 2020, RBGG staffed the case

18  with one partner (Rosen) and one now Senior Counsel who was a relatively junior

19  associate when the case began in 2015 (Yelin).  *Id.*, ¶¶ 8, 9, 46, 48.

20      The case required substantial communications and coordination with the EEOC for

21  the first four years.  Rosen Decl. ¶¶ 62-68; Yelin Decl. ¶¶ 3-16.  After the case was filed,

22  Plaintiff's counsel *inter alia*: (1) secured, reviewed and analyzed the 380-page EEOC

23  investigative file secured by expediting Plaintiff's FOIA request and negotiated with the

24  EEOC concerning whether we could depose its investigator; (2) analyzed and produced to

25  Equinox the EEOC file plus several hundred additional pages of documents from our

26  client; (3) served 35 Requests for Admission, 77 Requests for Production, and 14

27  Interrogatories on Equinox; (4) responded to 21 Interrogatories, 18 Requests for

28  Admission, and 42 Requests for Production from Equinox; (5) reviewed and analyzed

nearly 1,200 pages of documents from Equinox; (6) met and conferred repeatedly with Equinox regarding discovery issues, and briefed a series of issues to the Court; (7) prepared Mr. Andrews for his deposition and defended his deposition, taken over two days; (8) prepared for and deposed David Stern, Jack Gannon, and Emerson Figueroa; (9) worked with an Economics expert, Dr. Charles Mahla, on his damages model and expert report; (10) prepared Dr. Mahla for his deposition and defended it; (11) negotiated several stipulations with Equinox, including one to dismiss several of its affirmative defenses, one that limited Equinox's ability to call Mr. Andrews' spouse and children at trial, and one that deemed the EEOC file and other documents to be authentic; (12) briefed an Opposition to Equinox's Summary Judgment Motion and prepared Plaintiff's Cross-Motion for Summary Judgment and Reply brief; (13) investigated and interviewed and prepared declarations for several witnesses, including working with our private investigator; (14) prepared for and participated in the September 2, 2020 mediation with Howard Herman and the August 9, 2021 Mandatory Settlement Conference with Magistrate Judge Tse; and (15) conducted substantial pre-trial and trial preparations, including drafting motions *in limine*, preparing jury instructions, and engaging with jury consultants about the case and to plan a mock trial.  Yelin Decl. ¶ 20.

Plaintiff's counsel divided the work to minimize duplication of effort and to maximize each time keeper's experience and skills.  Rosen Decl. ¶¶ 46-50.  Ms. Yelin and Mr. Rosen carefully reviewed the time records and made substantial and appropriate reductions of the time claimed.  *Id.*, at ¶¶ 53-57 & Ex. L; Yelin Decl. ¶ 22.

In the beginning stages of the case, Ms. Yelin took the laboring oar to draft the EEOC complaint, communicate with the EEOC investigator during his investigation and his several attempts to negotiate a resolution of the matter with Equinox, prepare Mr. Andrews for his interviews, and participate in his interviews.  Rosen Decl. ¶ 46.

For the suit, Ms. Yelin was responsible for drafting the Complaint, securing the complete EEOC file, preparing written discovery requests and responses, reviewing and analyzing discovery responses and documents, preparing Mr. Andrews for and defending

his deposition, deposing Equinox's two Person Most Knowledgeable witnesses (one of whom, Emerson Figueroa, was also a percipient witness) and third-party percipient witness David Stern, and preparing the mediation statement for our September 2020 mediation with Howard Herman.  *Id.*, ¶ 47.  Ms. Yelin took and defended all the depositions.  *Id.* Mr. Rosen attended just one.  *Id.*

Ms. Harrold joined the case as discovery was about to close and the parties were preparing for the summary judgment phase.  *Id.*, ¶ 48.  Going forward, Ms. Yelin and Ms. Harrold divided the work of preparing all documents in support of Plaintiff's Cross-Motion for Summary Judgment and in opposition to Equinox's Motion for Summary Judgment.  *Id.*  Ms. Harrold was assigned most legal research tasks and immersed herself in the evidence including by preparing an extensive memorandum identifying both uncontested and contested material facts with pin-cite references to the evidence which was also a first road map that could be used for trial.  *Id.*  Ms. Yelin worked with Plaintiff's economics expert, contacted and interviewed potential witnesses, and worked with the witnesses to prepare their declarations in connection with the summary judgment motions.  *Id.*

Throughout the case, Mr. Rosen was involved in the overall strategy, review and editing documents, handling and directing negotiations with opposing counsel, and at the mediation and the Mandatory Settlement Conference.  *Id.*, ¶ 50.  Throughout RBGG's representation of Mr. Andrews, he provided high-level guidance.  *Id.*  Only when Ms. Yelin and Ms. Harrold were not available due to time pressured work in other matters did he take the laboring oar to draft documents or complete other time-sensitive tasks.  *Id.*

Plaintiff's three attorneys met and communicated as appropriate about tasks and projects.  *Id.*, ¶ 49.

Much of the work Plaintiff's counsel performed could have been avoided but for Equinox's choices at critical junctures.  Rosen Decl. ¶¶ 59-82.  Equinox refused to discuss settlement meaningfully until essentially the eve of trial, requiring Plaintiff's counsel to develop the evidence to defeat summary judgment and prepare the case for a jury.  *Id.*

**B.**   **RBGG's Rates Are Well Within the Market Rates for Comparable Attorneys in Comparable Cases in the San Francisco Bay Area and Frequently Have Been Approved by Judges of This and Other Courts.**

Under California law, requested hourly rates are reasonable if they are in line with "prevailing [rates] for private attorneys in the community conducting non-contingent litigation of the same type." *Glaviano*, 22 Cal. App. 5th at 751; *see also Ketchum*, 24 Cal. 4th at 1133; *Blum,* 465 U.S. at 895 n.11 (similar standard under federal law).  Moreover, "the policies of the FEHA attorney fees provision require that the court consider awarding market value compensation for an attorney," in order to incentivize plaintiffs' attorneys to take such cases on a contingency fee basis.  *Horsford*, 132 Cal. App. 4th at 399.

Counsel's rates must be measured against those charged by attorneys in the Bay Area legal market with commensurate skill, experience, and reputation.  Pearl Decl. ¶ 12. Market rates generally are not limited to rates charged by or awarded to attorneys in the same practice area or the same type of case.  *Prison Legal News v. Scharzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010).  Particularly for cases like this one that stretch over time, the rates to be applied are appropriately based on the current market rates at the time of the fee request, not historic rates, to account for the delay in payment.  *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 584 (2004), *as modified* (Jan. 12, 2005); *Missouri v. Jenkins*, 491 U.S. 274, 284-85 (1989); *see also* Pearl Decl. ¶ 21.

Plaintiff's counsel's rates are will within the range of the prevailing market rates in the Bay Area for work of similar complexity by lawyers of similar skill and experience. Pearl Decl. ¶¶ 10-21; Rosen Decl. ¶¶ 42-45; Organ Decl. ¶¶ 21-22.

To start, RBGG frequently litigates employment matters, both individual and class action, and Mr. Rosen has been deeply involved in the cutting edge of employment and attorney's fees law for over sixty years.  Rosen Decl. ¶¶ 16-41.

RBGG's rates are charged to its many fee-for-services clients and have been upheld as reasonable market rates by multiple courts in multiple venues, including in this district. *See, e.g.*, *Human Rights Defense Center v. County of Napa*, No. 20-CV-01296-JCS, 2021 WL 1176640 (N.D. Cal. Mar. 28, 2021) (Order approving RBGG's 2020 rates, including

[3796916.5]

15

Case No. 3:20-cv-00485-SK

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEY'S FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   that of Mr. Rosen); Rosen Decl. ¶ 45 (detailing numerous other federal and state orders

2   approving of RBGG's rates).

3       RBGG's 2021 rates for personnel for whom fees are sought are as follows:

| Timekeeper | Position | Class | Rate |
|------------|----------|-------|------|
| Sanford Jay Rosen | Partner | 1962 | $1,250 |
| Ernest Galvan | Partner | 1997 | $875 |
| Jenny S. Yelin | Senior Counsel | 2010 | $600 |
| Adrienne Harrold | Associate | 2018 | $350 |
| Grace Ann Brew | Summer Associate | N/A | $300 |
| Alexandra Daniels | Summer Associate | N/A | $300 |
| Cate Johnson | Paralegal | N/A | $275 |
| Adam Dean | Paralegal Clerk | N/A | $240 |

        Richard Pearl, who literally wrote the book on attorney's fees in California, Pearl

Decl. ¶ 4, attests that Plaintiff's counsel's requested rates are well within the range of

prevailing rates for attorneys in the Bay Area of comparable skill, qualifications,

reputation, and experience paid hourly in non-contingent cases, *id.*, at ¶¶ 10-21.  Mr. Pearl

provides detailed evidence of law firm rates in the relevant marketplace.  He provides a

survey of rates found reasonable for reasonably comparable services by courts in the Bay

Area, *id.*, at ¶ 14, and a survey of the standard hourly non-contingent rates for comparable

civil litigation by law firms with offices or practices in the Bay Area, *id.* at ¶¶ 15-21 &

Exs. B, C.  He testifies that "Plaintiff's attorneys' and paralegals' hourly rates are well 'in

line with the rates' charged by law firms that engage in comparable federal civil litigation

in the San Francisco Bay Area."  *Id.* at ¶ 13; *see also* Organ Decl. ¶¶ 21-22; Rosen Decl.

¶¶ 42-45.

        The  $1,250 rate for Mr. Rosen and $875 for Mr. Galvan are at the low end of the

range of 2021 and 2020 market rates identified by Mr. Pearl for comparable partners in

comparable Bay Area firms.  Mr. Pearl identifies rates that range from $975 to $1,515 for

partners near Mr. Rosen's level of experience, and from $675 to $1,000 for partners near

Mr. Galvan's level of experience.  Pearl Decl. ¶¶ 14, 17 & Ex. C; *see* Rosen Decl. ¶¶ 42-

45.  Ms. Yelin's and Ms. Harrold's rates too are well within the range of rates for

professionals at or near their experience levels identified in Mr. Pearl's declaration, and the

paralegal rates sought here are also well within the range identified by Mr. Pearl.  Pearl Decl. ¶ 17 & Ex. C; *see* Rosen Decl. ¶¶ 42-45.

RBGG regularly is awarded fees based on its hourly rates.  Rosen Decl. ¶ 45.  In *Human Rights Defense Center v. County of Napa*, Judge Spero approved Mr. Rosen's and other RBGG attorneys and paralegals 2020 rates, noting that he "place[d] significant weight on the opinion of Mr. Pearl that the rates charged by all of the timekeepers listed above are reasonable."  Rosen Decl. ¶ 45(a) & Ex. D at 18.  Earlier this year, Judge Cheng of the San Francisco Superior Court found RBGG's 2021 rates, including Ms. Yelin's, "generally consistent with market rates in the Bay Area and rates … awarded in other cases."  *Id.*, ¶ 45(b), Ex. E at 4.   RBGG has been awarded its billing rates in this district each year over many years in *Armstrong v. Newsom* (Case No. C-94-02307-CW), including for the 2021 rates for Ms. Yelin, Ms. Harrold, and Mr. Dean.  *Id.*, ¶ 45(c), Ex. F.  *See also, e.g.*, *Cole v. County of Santa Clara*, Case No. 16-CV-06594-LHK, Order Granting Final Approval of Class Settlement and Motion for Attorneys' Fees (N.D. Cal. Mar. 21, 2019) (awarding RBGG its 2018 rates); *Hernandez v. County of Monterey*, Case No. 13-cv-02354-BLF, 2019 WL 1934882 at *6 (N.D. Cal. May 1, 2019) (same).

RBGG's rates for paralegal and legal assistant work are also reasonable and commensurate with the prevailing market rates in the Bay Area.  Pearl Decl. ¶¶ 13, 17; *see, e.g.,* Rosen Decl. ¶ 45, Ex. F (*Armstrong* Q1 2021 Fee Order (awarding RBGG's requested 2021 paralegal rates up to $350 per hour)); *Cole v. County of Santa Clara,* Case No. 16-CV-06594-LHK, Order Granting Final Approval of Class Settlement and Motion for Attorneys' Fees (N.D. Cal. Mar. 21, 2019) (awarding RBGG's requested 2019 paralegal rates up to $340 per hour)).

## II.     THE COURT SHOULD AWARD A 2.0 MULTIPLIER

The Court should adjust RBGG's lodestar by a multiplier of 2.0 or no less than 1.5.  Under California law, the lodestar may be enhanced based on factors that include: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the

attorneys, [and] (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1132. Although not all four factors are required to award a significant multiplier, *see, e.g.*, *Trulsson v. Cty. of San Joaquin Dist. Attorney's Off.*, No. 2:11-CV-02986 KJM, 2014 WL 5472787, at *7 (E.D. Cal. Oct. 28, 2014), all factors are present here and none is already accounted for in counsel's hourly rates. *See* Pearl Decl. ¶ 23 (multiplier up to 2.0 appropriate in this case due to presence of all *Ketchum* factors).

Awarding a multiplier is particularly important in a case like this one, where the defendant violated the FEHA and then dragged the litigation out for several years before finally conceding liability. In such cases, attorney fee awards serve a deterrent function in assuring that defendants "will not deliberately ignore [civil] rights" again in the future. *City of Los Angeles v. Superior Ct.*, 21 Cal. 4th 292, 304 n.2 (1999) (noting that "[e]ven a small award of compensatory damages [] can justify a substantial amount of attorney fees"); *see also Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612–13 (9th Cir. 2000) ("[A] trial court does not under California law abuse its discretion simply by awarding fees in an amount higher, even very much higher, than the damages awarded, where successful litigation causes conduct which the FEHA was enacted to deter [to be] exposed and corrected.") (internal quotation marks omitted).

Courts in similar cases frequently award multipliers in the range sought here. *See, e.g.*, *Leuzinger v. Cty. of Lake*, No. C 06-00398 SBA, 2009 WL 839056, at *9-*12 (N.D. Cal. Mar. 30, 2009) (awarding a 2.0 multiplier because FEHA plaintiffs have hard time finding counsel, the fees were exacerbated by defendant not coming to the table and plaintiff having to litigate for four years, and an excellent trial recovery); *Caldera v. Dep't of Corr. & Rehab.*, 48 Cal. App. 5th 601, 611-12 (2020) (remanding for the trial court to, among other things, consider plaintiff's requested 2.0 multiplier because of the novel legal issues, taking the case precluded other employment by counsel, the quality of the representation of results obtained, and the undesirability of the case); *Crommie v. State of Cal., Pub. Utilities Comm'n*, 840 F. Supp. 719, 726 (N.D. Cal. 1994), *aff'd in part sub nom. Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) (awarding 2.0

[3796916.5]

18

Case No. 3:20-cv-00485-SK

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEY'S FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

multiplier in age discrimination case "[d]ue to the difficulty of the litigation, the success on the merits, and public interest value"); *Trulsson*, No. 2:11-CV-02986 KJM, 2014 WL 5472787, at *7-*9 (awarding a 1.5 multiplier due to the contingent nature of the case and declarations from attorneys with extensive employment law experience explained the result was excellent); *Taylor v. Nabors Drilling USA*, LP, 222 Cal. App. 4th 1228, 1252, 166 Cal. Rptr. 3d 676, 696 (2014) (affirming 1.4 multiplier because the litigation precluded the attorneys' other employment and the contingent nature); *Greene v. Dillingham Constr., N.A., Inc.*, 101 Cal. App. 4th 418 (2002) (awarding 1.7 multiplier, of which 1.5 was for contingent risk, in race harassment case, as explained in Rosen Decl. ¶ 13 and Organ Decl. ¶ 14).

## A.   This Case Involved Novel and Difficult Questions.

Age discrimination cases are generally considered to be harder to win than other types of employment discrimination claims.  Lawrence Organ, an experienced employment litigator who has tried numerous employment cases, generally avoids taking age discrimination cases now, for these reasons.  Organ Decl. ¶¶ 19, 22; *see also Conrad v. Chaco Credit Union, Inc.,* 946 F.2d 894 (6th Cir. 1991) ("[C]ourts have recognized that age discrimination cases are hard to prove and must often be proven indirectly by circumstantial evidence."); *La Montagne v. Am. Convenience Prod., Inc.*, 750 F.2d 1405, 1410 (7th Cir. 1984), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) ("Age discrimination may be subtle and even unconscious."); Paula Span, Discrimination Is Hard to Prove, Even Harder to Fix, N.Y. Times (July 22, 2019), https://www.nytimes.com/2019/07/22/health/age-discrimination-legal.html.

Discrimination against older people is also more socially acceptable in America's youth-oriented culture, making age claims riskier to present to a jury.  *See* Joe Kita, Workplace Age Discrimination Still Flourishes in America, AARP (Dec. 30, 2019), https://www.aarp.org/work/working-at-50-plus/info-2019/age-discrimination-in-america.html (explaining ageism is "[a]n accepted bias" and quoting an employment attorney stating that "[a]ge discrimination is so pervasive that people don't even recognize

it's illegal").  In fact, ageism is even more severe for black people like Mr. Andrews, as research shows that workers nearing retirement who are black are even less likely to be hired.  *See* Andrew Van Dam, For Black Workers, Age Discrimination Strikes Twice, Wash. Post (May 14 2021), https://www.washingtonpost.com/business/2021/05/14/age-discrimination-black-workers.

In this case specifically, there were several additional challenging hurdles.  Plaintiff had to prove that Equinox was his joint employer, since he never received a paycheck from the company during the acquisition, and Equinox argued that the acquisition period gave it more flexibility in termination or even hiring him than if he had been a new hire.  *See* ECF No. 48 at 7-8, 20-21; ECF No. 54 at 21-23.  One of the key witnesses, the Equinox manager who made ageist statements to Mr. Andrews, died before the litigation.  *See* ECF No. 55 at 9 n.2.  Like most age discrimination cases, there was little direct evidence of discrimination, requiring Plaintiff's counsel to gather and rely on circumstantial evidence, including statistical evidence that was difficult to obtain from Equinox.  *See, e.g.*, ECF No. 30; ECF No. 31; ECF No. 54 at 29; ECF No. 55 at 26-30.  Equinox persisted in arguing that the statistical evidence that Plaintiff collected could not be admitted to prove disparate treatment.  *See* ECF No. 69 at 27; ECF No. 70 at 19.  It also argued that Plaintiff's witnesses could not offer lay opinion testimony about their belief that Equinox terminated Mr. Andrews due to his age.  *See* ECF No.69 at 16-18**.**  Although the EEOC had made a reasonable cause determination after a thorough investigation, Equinox contended that there was uncertainty about the admissibility and weight of the file and the determination. *See* ECF No. 48 at 19-20.

**B.     Plaintiff's Counsel Demonstrated High Levels of Skill in Presenting the Case.**

To meet these challenges, Plaintiff's counsel succeeded at nearly every step, including by obtaining key documents in discovery and important admissions from Equinox's witnesses at deposition, marshaling the EEOC's investigative file and reasonable cause determination, locating and obtaining declarations from witnesses even

though the events had taken place years earlier, defeating Equinox's summary judgment motion, and obtaining Equinox's confidential financial information before trial.  Rosen Decl. ¶¶ 69, 71-72, 74-76; Yelin Decl. ¶ 20.  Plaintiff's counsel succeeded in obtaining a public judgment in favor of their client and damages compensating him for two years of pay if Equinox had not terminated him, avoiding the risk and delay of trial, including the risk of an adverse jury verdict that might have been fueled by implicit bias against Mr. Andrews, given that he is Black and now in his late 60s.  *See* Organ Decl ¶¶ 19-22; Yelin Decl. ¶ 21; Rosen Decl. ¶ 85.

RBGG's skill surely was a factor overcoming Equinox's "intransigent opposition." *Edgerton v. State Pers. Bd.*, 83 Cal. App. 4th 1350, 1363 (2000) (quoting the district court); *see id.* (affirming 1.5 multiplier in part because the defendant "continued to oppose this litigation even though [plaintiff] offered to settle the case"); *see also Leuzinger*, 2009 WL 839056, at *11 (2.0 multiplier based in part on counsel's skill in succeeding in the face of a defendant that "aggressively litigated this case and rebuffed Plaintiff's efforts to settle the action").

### C.   Plaintiff's Counsel was Precluded from Other Work During the Six Year Pendency of this Case.

Largely due to Equinox's intransigence, this case dragged on for nearly six and one half years from the time Plaintiff sent his original demand letter, the last two years of which involved necessarily time-intensive work by counsel.  *See* Rosen Decl. ¶ 85; Yelin Decl. ¶ 19.  During crunch times after suit was filed, Plaintiffs' counsel were precluded from accepting work from monthly fee-paying clients as well as performing paying work for existing individual and class clients.  Rosen Decl. ¶ 85.  Under California law, an upward adjustment of the lodestar is appropriate when "compensation has been deferred for … years from the time an hourly fee attorney would begin collecting fees from his or her client" and where "the demands of the present case substantially precluded other work during that extended period, which makes the ultimate risk of not obtaining fees all the greater." *Horsford*, 132 Cal. App. 4th at 399-400.

1

**D.    Plaintiff's Counsel Assumed Significant Contingent Risk.**

2    Plaintiffs' counsel absorbed enormous contingent risk in this matter.  Equinox

3    forced tough litigation and dragged the matter out until the verge of trial, and there was a

4    significant likelihood that RBGG would never recover a cent for the more than six years it

5    spent working on Mr. Andrews' behalf.  A multiplier is particularly appropriate to

6    incentivize other plaintiffs' lawyers to take risky, contingent fee FEHA cases in the future.

7    Otherwise, "large or politically powerful defendants" would be "effectively immunize[d]"

8    from having to answer for their discriminatory treatment, resulting in harm to the public.

9    *Id.* at 400.  For these reason, under California law, consideration of the contingent risk is a

10   paramount factor for awarding a multiplier.  *See E.E.O.C. v. Harris Farms, Inc*., No.

11   CIVF02-6199AWILJO, 2006 WL 1028755, at *21 (E.D. Cal. Mar. 1, 2006), *aff'd*, 274 F.

12   App'x 511 (9th Cir. 2008) ("California courts recognize that attorneys who do not receive

13   compensation for bearing the risk of failure will be reluctant to accept fee award cases.")

14   (internal quotation marks omitted); *Greene,* 101 Cal. App. 4th 418 (reversing and

15   remanding because trial court failed to consider contingent risk in declining multiplier,

16   after which a 1.7 multiplier was awarded of which 1.5 was for contingent risk, as explained

17   in Organ Decl. ¶ 14, Rosen Decl. ¶ 13).

18   **III.    PLAINTIFF'S COUNSEL'S DOCUMENTED COSTS AND EXPENSES ARE REASONABLE AND APPROPRIATE**

19

20   The FEHA provides for payment of litigation expenses, including expert witness

21   fees, for the prevailing party.  Cal. Gov't Code § 12965(b).  The Court should also award

22   Plaintiff's counsel $35,872.52 to reimburse them for their documented costs and litigation

23   expenses, including, *inter alia*, filing fees, deposition videography and transcription costs,

24   private investigator costs, and expert fees.  The costs ledger is included as Exhibit L to the

25   Rosen Declaration at page 132.

26   / / /

27   / / /

28   / / /

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEY'S FEES AND
EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court order Equinox to pay Plaintiff's attorney's fees and costs for their work through August 23, 2021 in the amounts of $1,366,971.00 for lodestar fees, with a 2.0 multiplier bringing the fees to $2,733,942.00, plus their costs and expenses in the amount of $35,872.52, for a total award of $2,769,814.52.

DATED:  September 29, 2021          Respectfully submitted,

                                    ROSEN BIEN GALVAN & GRUNFELD LLP


                                    By:  */s/ Jenny S. Yelin*
                                         Jenny S. Yelin

                                    Attorneys for Plaintiff MICHAEL ANDREWS